[No. 3162.  Decided July 29, 1899.]

CHARLES V. SIMPSON *et al., Appellants,* v. GEORGE E. HOLBROOK *et al., Respondents.*

GIFT—MENTAL CAPACITY OF DONOR—EVIDENCE.

Although the burden of maintaining the validity of a gift is upon the parties asserting it, the decree of the court sustaining the gift is warranted when it appears from the testimony of the attending physician and the majority of the disinterested witnesses, that the donor was fully competent to transact business, although suffering from the illness from which he afterwards died, and it was not established that there was any fraud or undue influence exercised upon him.

Appeal from Superior Court, Whitman County.—Hon. E. M. WARNER, Judge *pro tem.*  Affirmed.

*T. P. & C. C. Gose* and *M. F. Gose,* for appellants.
*Wyman & Neill,* for respondents.

The opinion of the court was delivered by

GORDON, C. J.—Plaintiffs are the heirs at law of one Samuel Simpson, who departed this life January 3, 1894.

The action was brought to foreclose a mortgage executed
by one Albert W. Lemon and delivered to the said Simpson
on the 29th day of March, 1892, the mortgage being given
to secure three notes of $1,000 each, payable January 1,
1894, January 1, 1895, and January 1, 1896, respectively,
with interest thereon at the rate of ten per cent. per annum
from January 1, 1893. Respondents were made parties
defendant under the usual allegations. Separate answers
were filed to the amended complaint, but they embodied
substantially the same defenses, which are (1) that
plaintiffs are not the owners or holders of the notes sued
upon; (2) payment of the notes and discharge of the
mortgage. There were lengthy replies filed by the appel-
lants, the nature of which will hereafter appear. In sup-
port of their affirmative defenses the respondents gave
evidence at the trial tending to show that in his life time
the said Samuel Simpson, mortgagee, had, prior to its
maturity, delivered the first note of $1,000 to the respond-
ent, The National Christian Association, a corporation,
and, prior to their maturity, had delivered the remaining
notes to the Oregon branch of The National Christian
Association, an incorporated religious society, and that
these notes were subsequently, for value, transferred by
the last named society to the respondent, The National
Christian Association. That thereafter all of said notes
were, by the last named corporation, canceled and surren-
dered to Greenville Holbrook, the then owner in fee of the
mortgaged premises, who executed new notes in lieu
thereof and secured the same by mortgage upon the same
premises. In other words, respondent, The National
Christian Association, relies upon a gift to it and to its
Oregon branch, with which it was closely allied, of the
notes secured by mortgage here in question. This gift
was attacked by the appellants (1) as having been made
or attempted at a time when Samuel Simpson was old,

and in feeble health, and mentally incapacitated; (2) for fraud and undue influence. Upon these issues the case was tried out, and a judgment and decree rendered in defendants' favor. Plaintiffs have appealed therefrom.

The lower court found, among other things, as follows:

" That at the time of the indorsement and delivery of the notes hereinbefore and in plaintiffs' amended complaint described, and for many years prior thereto, said Samuel Simpson had been a man of strong mental power and mental activity, and for many years prior to the indorsement and delivery of said notes and each of them, deeply, as a matter of religious faith and belief, interested in the objects and purposes for which the defendant, The National Christian Association, a corporation, and The Oregon Branch of the National Christian Association, a corporation, were organized, and that for many years prior to the indorsement and delivery of said notes, and each of them, the said Samuel Simpson had had a settled and determined purpose to devote the major portion of his property to charitable and religious purposes, and that the indorsement and delivery of said notes, and each of them, was in conformity with his life-long purpose aforesaid, and that at the time of the indorsement of said notes, and each of them, the said Samuel Simpson was suffering from an illness from which he afterwards died, but that at the time of the indorsement and delivery of said notes, and each of them, his mind was perfectly clear, and his acts in indorsing and delivering said notes, and each of them, was uninfluenced and unaffected by his said disease, or by other things or purposes other than the settled life-long purpose hereinbefore stated; that up to two or three weeks before his death, the said Samuel Simpson was the owner of, and in possession of a stock farm in Whitman county, Washington, and for many years and up to a few weeks before his death, had been in the sole management and control of said stock farm and engaged in many other business enterprises, and in building a house and other projects, in all of which the said Samuel Simpson evidenced not only the capacity to do business, but more than usual capacity to do business; and the court finds that at

the time of the indorsement and delivery of said notes, and each of them, that the said Samuel Simpson was in all respects fully competent to transact the business then in hand."

" That for many years prior to his death the said Samuel Simpson had been deeply and seriously interested in the several objects and purposes for which the said The National Christian Association, a corporation, and the Oregon Branch of the said The National Christian Association, a corporation, were organized, and other like religious and philanthropic enterprises; and that prior to the time of his death he had made suitable provision for his wife and he had made suitable provision for his own old age, and had formed a settled and determined purpose to devote the balance of his property to the carrying into effect of his religious and philanthropic views and beliefs, as represented by the objects and purposes for which the said The National Christian Association, a corporation, and the Oregon Branch of the National Christian Association were organized; that at the time of his formation of said purpose to devote his said property as aforesaid, the said Samuel Simpson was a man of strong mind and deep conviction and of unusual business ability, and was at the time of his formation of said purpose, utterly and entirely uninfluenced by the representations of any one, other than as men are ordinarily and properly influenced by such religious teachings as come to them in the usual way; that from the time of his formation of said purpose, to-wit, several years prior to his death, the said Samuel Simpson lived with the single view and purpose of so arranging his affairs that after his death all of his property, other than that which he had theretofore given to the several members of his family, as aforesaid, should be devoted to the several objects and purposes represented by the said The National Christian Association, a corporation, and the Oregon Branch of the National Christian Association, a corporation; and that on the 27th and 28th days of December, 1893, the said Samuel Simpson, consulted with one H. J. Thorn, an attorney-at-law of this bar, now deceased, as to the manner in which said disposition of his property, to-wit, the notes hereinbefore de-

scribed, might be legally indorsed to the said The National Christian Association, a corporation, and the Oregon Branch of The National Christian Association, a corporation, according to his said purpose hereinbefore stated, and that the said H. J. Thorn was with the said Samuel Simpson at the time of the indorsement and delivery of each of said notes as aforesaid, as his legal adviser and counselor, and not otherwise; and that at the time of the indorsement and delivery of said notes the said Samuel Simpson was not unduly influenced by any person or influenced by any person at all to so indorse said notes, but that each of said notes was so indorsed and delivered in accordance with his settled purpose so expressed and determined a long time prior to his death; and that no fraud or undue influence of any sort, nature or description is shown to have been exercised upon the said Samuel Simpson during any of the times referred to in this action."

The evidence at the trial was very voluminous, and an analysis of it would but needlessly incumber the opinion. But, assuming that the burden of maintaining the validity of the gift was upon the respondents, we think that the great weight of evidence upon the trial was in their favor. The testimony of the attending physician and majority of the disinterested witnesses at the trial sustains the findings of the trial court. Upon those findings the decree was right, and it must be affirmed.

DUNBAR, ANDERS and REAVIS, JJ., concur.

FULLERTON, J., not sitting.